Case No. 15-1062 et al. Verizon New England Inc. Petitioner v. National Labor Relations Board. Mr. Tellegen for the petitioner, Mr. Heller for the respondent, and Mr. O'Connell for the intervener. Good morning. Judge Henderson is not here this morning. She will consider these cases based on the audio recording of the oral arguments. You may proceed. Thank you, Your Honor. May it please the Court, my name is Arthur Tellegen and I represent Verizon New England. The IBEW and Verizon New England had a collective bargaining agreement that contained the following language. The union agrees that during the term of the agreement or any extension of it, it will not cause or permit its members nor will any member of the union take part in any strike or other interference with any of the company's operations or picketing of any of the company's premises. And it goes on to provide an exception for primary picketing away from, observing primary picket lines away from the company's premises. That ban is framed in absolute terms, clearly extends beyond the obligation, statute of obligations, for example, the Norris LaGuardia Act restrictions on the union's responsibilities are gone, the union guarantees its members won't do what the language forbids. In 2008, in anticipation of collective bargaining, the IBEW in Massachusetts made up picket signs and the due course distributed them to various locals and they in turn distributed them to its members. In Western Massachusetts, at a union meeting it was decided that the picket signs would be used both inside and outside company premises. Before work, employees would picket outside the company's premises, then they would take their picket signs inside, it was decided, and place the picket signs in their automobiles or trucks in a fashion that would display the picket signs in order. So can I ask this question? So there's an underlying question of interpretation here about the collective bargaining agreement, which is to say, does the conduct that was engaged in the display of signs in the windshield constitute picketing within the meaning of the collective bargaining act? Yes, sir. Agreement, right. And your position, it sounds to me, is that as long as the arbitrator concludes that the conduct at issue constitutes picketing within the meaning of the CBA, that's the end of the matter. The board has no ability to review that interpretation of the CBA. Your Honor, as long as the result he reaches, that is the collective bargaining agreement as interpreted by the arbitrator, is not inconsistent with the National Labor Relations Act, yes. Right. And so if it's a subject that's waivable, so if we assume for purposes of argument that the kinds of conduct that might arguably constitute picketing are things that can be waived in a collective bargaining agreement, then I take it then you would say, well, no matter how the arbitrator construes the word picketing in the agreement, it can't be contrary to the act because it's waivable. And if it's waivable, then as long as the arbitrator concludes that the conduct at issue constitutes picketing, that's the end of the matter. The board has no ability to take a second look. I'm sorry, as I believe this Court has said repeatedly. And so would that be true, for example, if you had a situation in which the underlying conduct wasn't posting of signs within a car but it's just a conversation in the workplace where one of the employees says to another employee, you know, whatever this sign says, Verizon, honor your contract or something like that, as I recall. If the person had just said that to their colleague in the workplace, I think Verizon should honor its contract. And then suppose that the employer takes some action against them. And then the arbitrator says, well, the collective bargaining agreement says no picketing. Picketing is communication. The employee was engaged in communication. Ergo, it's picketing, it's waived. There's no ability for the board to take a second look at that under your view. Is that right? No. Two reasons. One is I don't think that right's waivable. You've described a communication within the workplace between two employees. And I have some doubts as to whether the parties can waive that right. What's different about that than a communication in writing? I don't know. Maybe there is a difference. But there's a difference between verbal communications and communications in writing for purposes of whether the entitlement to do that is waivable. There might be. I just don't know. You've described an oral communication between two employees in the workplace, whether that's waivable or not. No one has questioned that posting signs, posting ticket signs, is waivable. And where one would draw the line on that continuum, I'm not fully prepared to describe that. But then the second part of the answer is the case isn't over. The union has a right to bring an action under Section 301 saying that the arbitrator's decision is so bizarre it doesn't draw its essence from the collective bargaining agreement. There are constraints. The question is which constraints can the union pursue? And with respect, Your Honor, the example you've given is pretty extreme. I mean, that's not this case by any stretch of imagination. But, yes, the proper disposition of the case, the rule ought to be, as I think has been said by this Court a number of times, as long as it's waivable and the parties have submitted the case to an arbitrator to decide what's been waived, the arbitrator's decision will be binding and the board shouldn't second-guess the arbitrator's decision, as it did in this case. No matter how egregiously wrong the arbitrator's interpretation of the CBA might be? Yes, Your Honor, with the caveat that if it's egregiously wrong, there's a federal court to stand in. And where? You've said that repeatedly. Cornell case, Your Honor. Cornell? Where does it say that? I think it's a pretty critical point because I think there's a question as to if this is true, if this is, in fact, the proper interpretation of the lay of the land now, that has to come from somewhere. It either has to come from our decisions or it has to come from the statute. That kind of limitation on the board's ability to look at whether the arbitrator has made an egregiously erroneous interpretation of the CBA has to come from somewhere. In Fornell, the Court said that the error that the board committed is an assumption that it was a statutory issue separate from a contractual issue. It went on to describe the fact that once the contractual issue was decided, there can't be a statutory issue. I don't know if that was Fornell. I thought that was Judge Edwards' opinion in American Freight, although maybe I'm wrong. No, you're right. Okay. So as I understood American Freight, I thought what was going on there is that everybody agreed with the interpretation, with the arbitrator's interpretation of the collective bargaining agreement. The problem was that the argument was made that even if that's the right way to interpret the collective bargaining agreement, well, then there's a statutory right that kicks in and trumps it. And I think what our Court said was, well, that can't be right because if you can waive it under the collective bargaining agreement, then the statutory protection just goes away and all we're talking about is the scope of the contractual protection, and that can't. And once everybody agrees with the interpretation of the CBA, well, the statute drops out of the equation. It seems to me that the issue here is an antecedent one, which is that everybody doesn't agree about the interpretation of the CBA. The arbitrator said one thing, and the Board disagrees with that interpretation. So I don't know that American Freight gets you all the way home. It may not get me all the way home, Your Honor. But I point out what the Court has said repeatedly is the parties may not have agreed to that interpretation. The parties have agreed to the person who's going to render the interpretation. And I believe the point of Fornell and American Freight and other cases is that once having bargained, reached an agreement that they'll be bound, the parties will be bound by the interpretation of the arbitrator. That should be dispositive. What about the statute that says this power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise? The Board cites that as saying, well, right, the Board can defer, even defer fully, as Judge Edwards advocated in the Ohio State article you cite, but it doesn't have to, Your Honor, given that statutory language. That language does not oust the Board of Jurisdiction because there is a collective bargaining agreement. It doesn't say what the parameters of the jurisdiction are. And I take that language to mean that the Board retains jurisdiction to decide whether the collective bargaining agreement is consistent with the Act. And, therefore, if the collective bargaining agreement can waive rights, then it's for the arbitrator to decide whether those rights are waived. And the arbitrator's decision essentially merges into the contract. Yes, Your Honor, as not only Judge Edwards, but this Court has said. And this would mean, presumably, that the Board's new policy, the Babcock policy, is problematic, too, because the Board's moved in the opposite direction from where it was even in this case, right? The new policy is a non-deferral policy, Your Honor, with respect to the Board. Right, but if we accept your argument in this case, that new policy's out as well, correct? It is indeed, Your Honor. I didn't come to argue the new policy, but I certainly believe that the new policy… It's a lesser included. It is a lesser… I'm not so sure, Your Honor, that it's lesser than this case. I mean, this case is such that, absent your deciding that the Board really has plenary review of arbitration awards, you can't get to the result that the Board got to in this case. No, no, no, that doesn't have to be true, because I think plenary review is one thing. De novo is one thing. Nobody's claiming. I don't think the Board claims that it has de novo authority to review arbitrators' interpretation of a collective bargaining agreement. I think what it's saying is, the way it construes the repugnancy part of the standard that it's invoked repeatedly, repugnancy encompasses circumstances in which, with some deference given to the arbitrator's decision, it's just beyond a pip. And your argument would be, and I'm not saying whether it's right or wrong, your argument would be, well, that can't be something the Board can do. It simply has no ability to take a second look at the arbitrator's interpretation of the CBA unless that interpretation is itself in violation of the Act. What I'm advocating is not Spielberg, literally. I agree with that. However, in this case, the application of Spielberg-Olin is so extreme that I would suggest… It's virtually plenary review. Even with our deference to the Board, we have to give some deference to the Board. The Board, in essence, says that the arbitrator's decision is palpably wrong, to use the term. And we have to say that it was unreasonable for the Board to conclude that the arbitrator's decision was palpably wrong, if we're in this box. I know you say we're not even in this box, but if we're in that analytical box. Yes, Your Honor. I mean, palpably wrong in this case seems to be that not only was the Regional Director of Region 1 wrong, she found no violation at all when she reviewed the facts. Not only was the Administrative Law Judge wrong, but the Board, in reviewing this arbitrator's decision, doesn't question his result. The result is waivable. Everyone seems to agree on that. The question is the reason he got there. And he didn't find a clear and unmistakable waiver. And he made the mistake of, because he's a humorous guy, citing in a footnote an 1898 treatise. And the Board seems to say, well, that's the reason for his decision. It's not as the whole rest of the award, which describes in detail the party's positions, describes in detail his consideration. And he comes to the conclusion saying somewhat cursorily, this is picketing. So your argument is not, just so I understand it correctly, your argument is not that what the Board did in this case in taking a second look at the arbitrator's interpretation of the CBA is contrary to the Board's own practices in the past because the Board has done that before. Your argument is the Board did that here, the Board did it before, but the Board is never authorized to do it because if the Board does that, it violates this Court's decisions. Right? The latter point is true, but the first point, I would say, is not exactly right. I do think that even if this Court said Spielberg, Olin, and even Olin on a little bit of steroids, the constraint on a little bit of steroids is correct, you can't get this case there. This case seems to be based on the singular proposition that there was no clear and unmistakable waiver, and the Board never says what it expected to be clearly and unmistakably waived. I have a question that the restriction on picketing is completely wrong. Just to explain, again, if we're in that analytical box, I think what they're saying is it's palpably wrong to say that a ban on picketing extends to a ban on signs in the car in the parking lot. That is correct what it says, but that means that it would say in this case that a ban on picketing on picket signs, a use of picket signs in a car in a parking lot is not picketing. It ignores this case law out there that seems to point somewhat in the other direction. It ignores in the circumstances of this case, a very experienced regional director of Region 1 said it's not a violation at all because it's not just picket signs. Your Honor, if this case was simply about somebody put a sign in a car and the arbitrator concluded on that basis it was picketing, then the Board's decision would at least be understandable under Olin and Spielberg. I think still not consistent with this Court's rules, but consistent with the Spielberg-Olin doctrine. They were picket signs. They were used in picketing. They were distributed for picketing purposes. They were used, although not as the counsel for the Board points out, not exactly before the picket signs and picket signs were put in cars in this case, but they were throughout Massachusetts. When you say they were picket signs, what do you mean by that, that they were picket signs? They were signs that looked like picket signs and walked like picket signs and were used as picket signs. In what way? Just educate me because what is the difference? They were 22 by 24, and they had a message. Two uniform messages. From the commonwealth of Massachusetts, they were intended to be used and were, in fact, carried outside in picketing. And those same signs were printed up for the specific purpose of picketing, were brought inside companies' facilities, and put in the windshield. So they were designed for use in picketing. And they looked in your eye. I wish I had one with me. They were picket signs. I don't think anybody quarrels with that proposition. But it just seems to me that whether they were picket signs depends on what was done with them as picketing. Because you could have a sign that could be used for picketing, and it could be used in ways that I don't think anybody would consider to be picketing. You're right. And it's true that you could picket with a candy wrapper, and it's true you could take a picket sign and frame it and put it in your living room. These signs were printed up for picketing and were carried by pickets for picketing. There was no ambiguity. When we went through the award, there's a significant substantial quote from the manager who asked the picket signs to be removed. And his response to why he did it was, there were picket signs that the pickets carried, and then as far as I was concerned, the car was carrying them when they were inside. Now, that's not dispositive of any legal issue, but I think it's a fair description of the practical implications of what was going on. So the collective bargaining agreement, I think, in the clause that refers to the ban on picketing, there's also a subsequent sentence that talks about crossing the picket line. Crossing a picket line away from company facilities. So how would you cross the picket line where the picket signs are put in a car? Does that mean walking by the cars if that's picketing? You could not cross the picket line to the extent there was a line of cars. Nor could you cross the picket line as the picketing was described. This was informational picketing outside. There was no intention to interfere with the company's business. And I realize my time's up at one point. If I may. The language of the contract talks about strikes, interferences with a company's business, or picketing. The board's description of what it thinks is picketing is inherently interference with a company's business. The board's view of what, but the faculty did a much better job reading the contract than the board did. Picketing has to mean something than disruptive picketing. And that seems to be what the board says it has to have. As opposed to informational picketing? Yes, Your Honor. All right, thank you. Thank you. Thank you. Good morning, may it please the court. My name is Joel Heller, representing the National Labor Relations Board. Employees have the right under the NLRA to display pro-union signs in their personal vehicles. The board did not abuse its discretion in this case in declining to defer to an arbitration award, countenancing Verizon's deprivation of that right. The award was fundamentally inconsistent with two well-established labor law principles, the settled meaning of the term of art picketing, and the process for discerning whether a statutory right has been waived. You don't take issue with the proposition that the use of signs is something that's waivable? That is a waivable right, but there's no— So if the contract says specifically enough, then there's nothing that can be done. The arbitrator enforces the contract. There's no review of that by the board? There is a review by the board, but it's a review for whether it is repugnant to the purposes and policies of the act. Whether the agreement is? Whether the award, whether the arbitrator's award is repugnant to the act. That has always been part of the board's deferral framework, and that's what the board was doing here. The award essentially modified this term of art. But our cases, as you're aware and as opposing counsels pointed out, have long expressed doubts about that. And Judge Edwards, several opinions of Judge Edwards, Judge Silberman, utility workers, plumbers and pipe fitters, American Freight, Fornell, all make the point that if the contract is interpreted by an arbitrator, then it's a contractual issue, not a statutory issue, so long as it's a waivable right. Right. So the discussion So how do we get around, under your theory, our case law? Well, I don't think there's ever been a holding that says as long as it's a waivable right, the award is necessarily not repugnant. There's not been a case from this court finding that the board abused its discretion. Well, plumbers and pipe fitters says where the statutory right implicated by a grievance settlement is within the category of waivable rights, then it is unclear why the board would ever have any choice but to give deference. Right. So the reason for the repugnancy analysis is it's essentially a backstop. The board gives respect to the arbitral process by allowing the parties to attempt to go through their contractual grievance arbitration process in the first instance. But under Section 10A of the Act, as Your Honor quoted earlier, the board has a role in ensuring that the output of that award is not fundamentally inconsistent with the rights that the board is tasked with enforcing under the NLRA. So all of our cases, you know, I think Judge Edwards summarized them, saying our cases make clear then that the issue is not one of board deferral. Instead, the parties have, by waiving their statutory rights, written the board out of their disputes. That's Judge Edwards describing our case law. That's wrong? The court has also said that the board's deferral policy is not one of abdication. And that is what Verizon would have here. If the board simply says as long as the award has issued or the arbitrator has issued an award, the board needs to defer. But here it is, the award was contrary to settled board and court case law on the meaning of picketing. And which... That's really only if we get to that, right? We'll get to that issue. The first question is whether we get to that. Right. But it goes to that first question because it is whether the award is repugnant to the Act. And it's repugnant to the Act if it relies upon or if it is irreconcilable with settled law. In the case law, at least one interpretation of the case law, and I want to parse this and hear your response, but one interpretation of the case law is if the arbitrator interprets the contract to waive a right that is waivable under the Act, then that's the end of it for the board's purposes in terms of reviewing the substance of the arbitrator's decision. I don't think that has ever been a holding of this court. And there's certainly board cases finding that... And that's why I asked about the new Babcock policy today, which I think is at issue if we were to accept the other side's, Verizon's interpretation here. But the court cases seem... And there are a bunch of them, and I agree you could find, I guess, some tentative wording in a few of them, but there's certainly not tentative wording in several of them, too, starting with Fornell, which, you know, that's 1982, Judge Edwards. We hold that the board was not free to substitute its own interpretation of the contract for the interpretation of the arbitrator. Right, and I don't think that's what's happening here. It's not because the word picketing is not simply a word in a contract. It is a term of art that has a settled meaning in the labor law context, including from Supreme Court decisions. But that's an argument that the arbitrator blew it. But we need to... But that's not an argument that's cognizable, at least under this, the reading that I'm positing. Well, Verizon doesn't challenge the board's framework, which includes... Yes, it does. They challenge the application. They forthrightly challenge it. They just did. Well, I think they challenged... And I said the Babcock thing would go, too, by the way. Well, that's for another day. Yeah. Well, no, but actually, if we took the... I want to get your position on this. If we took their position here, I think the Babcock policy goes with it, doesn't it? Because we would be saying, if we took their primary position here, we would be saying that the board has no role in reviewing the substance of the arbitrator's decision. I think that would be... So long as it's a right that was waivable. Well, I think that would be contrary to Section 10A of the Act, which says that the board has authority to adjudicate unfair labor practices irrespective of their agreement. So I don't think that... But what about the interpretation that Verizon gave to that language, what the council did today, which is that what it says is that the board has jurisdiction to make sure that, at the end of the day, the agreement doesn't violate the NLRA. So, in other words, you can't purport to waive something that's non-waivable. So that would give some... It seems like that would give at least some effect to the statutory language without... Now, it wouldn't be robust effect, but it would give some effect to the statutory language. Well, essentially what would happen is that Verizon's position would lead to arbitration awards that find that countenance a deprivation of Section 7 rights, what would otherwise be an unfair labor practice, without any evidence, or possibly without any evidence, that the parties waived that right. And that's what we have here. But they are waivable rights. They are waivable rights, but only if they are actually waived. And if the arbitrator jumps the rails completely, there, as you suggest happened here, there is federal court review of arbitrator's decisions. There is, but that's under a different standard here. That's the point, I think, which is they say that's the standard that should govern, and otherwise the act and our case law suggest strongly that the arbitrator's decision otherwise has to be accepted by the board. And they cite a different provision of the statute, of course. Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement. So that's what they use as their statutory hook. Well, I would just like to step back for a minute and say that the board's deferral policy is a discretionary one. There's nothing in the statute that requires the board to defer to arbitration awards. The board has decided to do so, and it has set up this framework in order to do so. And so you're – this is a helpful question. Your point is that the board could do what they're advocating, but the board is not required to do what they're advocating in terms of review of arbitration. Or are you not even saying that? Well, I think – right. I guess the board could have established a, I guess, less rigorous as far as board review framework for defer. So a more deferral-friendly framework. But they – it was reasonable for the board to set up the framework that it has. But you'd also go the other direction and say that the board doesn't need to defer at all. It could also – it's just a grace that the board is deferring at all to arbitration decisions. Right. Right. And once the board has established this framework, it must stay within that framework. And that is what the board did here. On the framework, can I just add? So the framework is palpably wrong, I think. Yes. Does that mean a palpably wrong interpretation of the contract? I think there has to be something fundamentally wrong with the decision. And here it's not just that the – Just pause. Yes. What do you mean by that? Are you agreeing or disagreeing with the way I said it? Palpably wrong interpretation of the contract? Is that correct or not correct? That is not the whole universe here. Is that part of the universe? It is palpably wrong. In a case like this, which – Because that seems to be what's going on. The board's saying, here's the contract. Here's what happened. The arbitrator missed the boat in interpreting the contract. Well, the arbitrator missed the boat in the process he used. I mean, there was an improper mode of analysis here, which the board has found to be grounds for finding an award repugnant. And that is the award gave no consideration to the understanding of the parties as to Article G-10, which is a cornerstone of the waiver analysis. The award also gave no consideration to the board and court case law on the meaning of picketing. And as the Supreme Court instructed in Master of Plastics, a collective bargaining agreement must be read in light of the law existing when it was signed into. Go ahead. I've seen, just to pick up on what Judge Kavanaugh's asking, I've seen this distinction in your decisions. I think it's in this case in footnote 10, and then in U.S. Steel way back in 1982 or thereabouts. The distinction between just a palpably wrong interpretation of the agreement, which is the way that Judge Kavanaugh phrased it, and a critique of the process by which the arbitrator reached his or her decision. Right. But I guess I'm not seeing the distinction between those because it seems like what the board is saying when it says that there was a wrong process by which the arbitrator reached its interpretation, his or her interpretation of the contract, is that it was a palpably wrong interpretation because it didn't take into account board decisions, it didn't take into account court decisions, which all just seems like another way of saying this interpretation is just out of bounds. Well, I think the distinction would be if the award did give some consideration to this past practice evidence or to prior court decisions and said, you know, I look at all this evidence and I think it leans towards a waiver here. So it went through the correct process but came to a different result. Well, that I don't think is the type of case where the board would decline to defer. But here it's not just that the board... Even a palpably wrong result? Well, it would... I mean, obviously it would depend on the facts of the case here, but what we have here is not just a palpably wrong result, but it is also a palpably wrong process leading to that result. It was a misapplication of labor law concepts. And so I think that's why in this case... Well, when you say misapplication of labor law concepts, I mean, it seems to me that suppose you have a situation in which the arbitrator actually looks at relevant board decisions on what picketing means and then just completely misunderstands those decisions. And you could say, well, that's a really flawed process because it's a terrible process because all those decisions clearly say X and the arbitrator read them to say Y. But that seems to me to be the same thing as saying it was just a palpably wrong result because if you look at the relevant decisions, they just don't support the result. I'm not seeing what fundamental divide... I mean, you may well take the position, I think you already have, that we don't have to focus on that process. We can just say that the interpretation of the agreement is just palpably wrong, so palpably wrong because it's so contrary to every legal assumption that must have underlain the party's expectations when they entered into the agreement that the board can second-guess the arbitrator's decision based on that. But short of that, I guess I'm having a little trouble seeing the distinction between the process by which the decision was reached and the palpably wrongness of the decision. Well, I think they were both palpably wrong in this instance, but the fact that whether only a palpably wrong result would be enough is not a question that has to be answered in order to uphold the board's decision in this case. And as you were getting at before, I think it's not just a wrong result in this case, but it is such a broad definition of picketing that it could cover something like an employee conversation or a bumper sticker or a shirt or a letter to the editor perhaps. And because arbitral awards sometimes have precedential effect, Verizon could rely on this broad decision in the future to prohibit or even punish employees for engaging in a wide swath of protected activity, and that is clearly a result that is palpably wrong or repugnant to the purposes and policies of the Act. Can I follow up on one question, which you started to say, which is whether Verizon, in fact, is making the threshold argument that we've been discussing this morning to the effect that once the arbitrator construes an agreement, the board has no role to play in looking at the bona fides of the arbitrator's construction. That seems to me what the argument is, that they're reading the repugnancy analysis out of the deferral framework. But you don't take issue with the proposition that Verizon is, in fact, making that argument. I thought you were starting to say that you didn't read, you didn't understand Verizon to be making that argument. And I'm just wondering. I don't think they are. They don't directly challenge the framework, but I think the effect of the argument, yes, would be to read out the repugnancy prong of the analysis. Because they are making the argument that once the arbitrator construes the collective bargaining agreement, that's the end of the day. The board has no role to play after that. Right. I think they have. Yeah, yeah, they have been making that argument. Okay. Again, on our case law, maybe I'm over-reading it, but the Gorman and Finken treatise says, describing plumbers and pipe fitters, the court concluded that when the statutory right claimed before the NLRB is waivable by the union, a settlement that is reached through fair procedures must automatically prevail, and the board cannot decline to defer. Well, I think the language of plumbers and pipe fitters, the language is dipped up, because in that case the board had deferred to an arbitral settlement, and the court was upholding the board's decision to defer. So the court does not hold that the board can never find an arbitral award repugnant to the purposes and policies of the act. Well, we also said in that case we're at a loss to discern the theoretical underpinnings of the palpably wrong criterion. Well, I've attempted to provide some theoretical underpinnings in the brief, but, again, that would be dictated in that case because the ultimate holding was affirming a decision to defer. I haven't found any decisions from this court reversing the board decline to defer on the repugnancy prong. There are cases from the Second and the Fifth Circuit enforcing board decisions, finding an award repugnant and thus declining to defer. Do you think we have room, notwithstanding our precedence, to apply the palpably wrong standard? I think the court does, yes. The court has. Excuse me. The court has. I think I at least approved of that standard or at least applied it. Well, there are a lot of cases expressing skepticism. Now, they're dated, but there's been nothing in the interim that I've found to depart from what those cases said. They're all in the 80s and 90s, but still, they still seem to be the governing standards or precedents in this court. Well, again, I would just say that the language of suspicion on the repugnancy prong is dictated. It's not part of the holding of that case, so I think the court does have a role. That's true in Fornell, and that's true in? Fornell was not a deferral case. Plumbers and pipefitters, utility workers, those who were both cases. American Freight? Well, as Judge Univasan mentioned earlier, American Freight, it was a different prong of the deferral analysis. That was whether the issue was before or considered by before the arbitrator. It was not about repugnancy. Utility workers. But in describing the tests, it did say that the obvious fallacy in the board's analysis is its conclusion that there's a statutory issue apart from the contractual issue? Yes, and I think the distinction there is, like Judge Univasan was mentioning, that in American Freight, it was clear that there was a distinction between the contractual issue and the unfair labor practice issue, and the court found, well, once we resolve the contractual issue, there's nothing left of the unfair labor practice issue. That's the end of the story. But here, there is a difference between the contractual, the word picketing. Sorry, there's not a distinction. There's no evidence of a distinction between the word picketing and the contract and the word picketing and labor law. And so we're only getting into that repugnancy prong of the analysis. We're not getting into the question of whether those are separate issues, which was what the court said was not the case in American Freight. Because I thought in American Freight, the board didn't dispute the arbitrator's interpretation of the CBA. Right. Here, the board is disputing the arbitrator's interpretation of the CBA. That's the whole point. Right. Yes. And so that's why it's not. But the sentence before did say the board may not substitute its own interpretation of Article 16 for that of the Grievance Committee. Right, and I don't think that's what's happening here. It's because picketing is not simply a word in a contract that needs to be interpreted. It is a term of art that has a meaning. And what the board found was – Suppose it were just a word in a contract. So if it's a word like, well, in utility workers, it was enforcing the board's decision in Southern California Edison, deferring to the arbitrator, finding that the employer could implement a reasonable safety rule. And so the word reasonable was interpreted by the arbitrator to cover the rules in that case. And so that is a word in a contract that the arbitrator has the primary role of interpreting. Here, picketing is, like I said, a term of art with a specific set of meaning. So if an arbitrator just botches the interpretation of a word in the contract, interprets it to mean something contrary to its obvious dictionary meaning, the board has to defer in those cases? I don't think that's your position. Well, I don't think it's – they have to be, but that would be a different type of case. When the phrase at issue is a word that has a meaning in the labor law context, that's really where the board has to step in and say, this is repugnant. This is if an arbitration decision read a contract and declared that, in this collective bargaining agreement, the word employee shall mean supervisor. And why did the region and the original people to confront this make the same mistake that the arbitrator did? So the regional director found, as the board did, that the word was repugnant and declined to defer. She went on to rule on the merits, essentially. Rule on the merits that the arbitrator's decision would stand? No. Well, the effect, the ultimate effect would be the same, but she did not defer to the arbitration award. And, of course, I don't think that the board can be found to have abused its discretion by declining to defer to an award on grounds that were not in the award. So I don't think that the regional director's analysis goes to a deferral. I'm just pointing that out because I think that's part of their complaint here is that it went through several steps and then – Right. And I'm explaining why I don't think that helps them. And ultimately, legally, that's neither here nor there, but I wanted to give you a chance to respond to that. That would be my response. Okay. Thank you for your submission. We'll give you a couple minutes for rebuttal. Oh, I'm sorry. Yes. The court sheet. Thank you, Your Honor. Alfred Gordon O'Connell for the intervener, IBW Local 2324. And to pick up a line of questioning that you ended with counsel for the board, when we're talking about the deferral regarding the arbitrator's construction of a word or phrase in the collective bargaining agreement, I think it's worthy of note that in this case the word at issue in the collective bargaining agreement is not just any old word but a word that is Section 7 protected activity. It would be as if the arbitrator construed the word communication or any other word related to protected Section 7 rights and gave it a meaning that is completely inconsistent with that. The contract could have waived this right, correct? The contract could. Well, I shared Mr. Tulligan's skepticism that the contract could waive the right of employees simply to verbally communicate. The contract could waive this right of the conduct at issue in this case, correct? Yes. And then I would point you back, Your Honor, respectfully to Judge Edwards' own words in the American Freight System's case where he indicated that the board had lost its way inasmuch as it did not consider this waivered standard. But if you look at the words that Judge Edwards used, he described that as a clear and unmistakable waiver standard, not just a plain old off-the-shelf waiver that parties looked at it and therefore were considering waived. Judge Edwards used those words in American Freight System's. So clear and unmistakable, I guess I'm not quite sure what to do with that because that is part of the decisional law in this area. But the board says in its brief at page 14 that, thus, although the board does not require that an award expressly employ a strict clear and unmistakable waiver analysis, it does look to whether the award examined factors such as legal precedent and the party's past practice. Yes, Your Honor. And when you're parsing the decisions of this court, I would respectfully draw distinctions between cases that are 8A5 cases where this court and the board before it was looking to see whether the parties had covered a subject matter by bargaining over it versus where you're looking at a pure Section 7 right and an 8A1 case where it's an employee right that the parties are that the union is alleged to have waived. So bargaining rights are a bit amorphous. You can bargain over any subject matter that is mandatory or even permissive. And once you've done that, the parties have to stick with their bargain. But when you're waiving a Section 7 right, that has to be clear and unmistakable. The Supreme Court has said that. This court has said that. The board has said that for 50 years. And so I would say that if you're looking for how... So you think the arbitrator... I guess the question it seems like is whether the arbitrator was required to apply a clear and unmistakable waiver standard in construing whether the term picketing encompassed the signposting conduct at issue here. Under the facts of this case, I don't know whether you'd have to determine whether he looked at it or not. If he had, it certainly would change the analysis somewhat. But if this court sanctions the repugnancy part of the test, this court has described it as the board does in the utility workers case, for example, as finding that the arbitrator's decision is not susceptible of an interpretation that is consistent with the Act. Not that's consistent with the contract. That's consistent with the Act. And to find that the Act has for 50 years been construed to mean that Section 7 rights must be clearly and unmistakably waived and then to say that the arbitrator did not clearly and unmistakably find that is almost immaterial if there was no clear and unmistakable waiver, which I think the board has the right to find in the first instance, and this court has the right to review as well. And if you posit that alongside what Mr. Tellegen suggests would be the appropriate approach, which would be the union should accept that the matter should be deferred but then file under Section 301 to have the arbitration award reversed because it doesn't draw its essence from the collective bargaining agreement, those are completely different standards. Under those Section 301 standards, there's no intervening Act. There are no intervening protected statutory rights at issue. That's why the board, under the statute in Section 10, has the right to defer or not to defer. It doesn't have to have a deferral policy at all. It could conceivably look at each case on its own and not defer, which brings up the Babcock question. If the board has the ability to defer or not to defer, does the board then get to set the level in between? And isn't what this court is doing really deciding whether the board has adopted a set and understandable criterion for deferring and followed that appropriately? Because this court and the Supreme Court would say once the board sets a path, it should follow that path or describe why it's not following that path anymore. So if this court were to get to the underlying Babcock and Wilcock question, which has not been briefed to you and which the parties have admittedly not prepared to argue before you today, I would certainly have to posit that the board has the right to eliminate it altogether so the standard they've now set in Babcock would be appropriate. And under that standard, there is no question this employer violated Section 881 of the Act because this employer told employees they could not put signs in their cars, just as if it were a bumper sticker, to express concern among themselves about their working conditions and that there was no clear and unmistakable waiver of that Section 7 right. Thank you. Thank you, Your Honor. Thank you. Your rebuttal. I don't think that the board could establish a non-deferral policy that doesn't give way to the various congressional mandates on arbitration. And I do think the statute is compliant with it because there is review by the board for, notwithstanding what Gordon O'Connell said, there is review. I concede that if this contract is interpreted as unlawful, then it's unlawful and the board can still find that. I just want to emphasize arbitration is really important. It is, in fact, what makes collective bargaining work. And parties trust that process, even when it comes to a really bad result for them. And we're focusing on what, you know, I don't think the board trusts that process, at least not completely. And that's part of the historic reservation of the palpably wrong standard and part of its current move even to a more stringent review, arguably, of arbitration decisions. Mr. Howell did a valiant job defending the board's decision in this case, but his inability to really answer your questions about what palpably wrong actually means, unless it means, like, really, really wrong, I would suggest that's what it means to me. Yeah. Isn't that just what palpably means? Exactly, Your Honor. And what they really mean is it's not so much the process, it's your look at the award, and if it's really bad, I almost used a vernacular which I get in trouble with in this court, but if it's really bad, then you should find it palpably wrong. Now, first of all, this award wasn't in any way really, really bad. That's why we made reference to the belief that it is. Well, they think it is. They do. They do. But it's hard to get to the existing case law. But keep going. You were making another point. But more importantly, Your Honor, with respect, if it's really, really wrong, the Supreme Court has already told us what happens to really, really wrong awards, and it's very careful about putting constraints around it that protect the process. That is the separate process you mean? That is the 301. That's not necessarily to the exclusion of this process. Just because there is another process doesn't mean that the board doesn't have the authority to look at really, really wrong, which is deference. It's still deference. It's not as much deference as you'd like, but it's still deferential review. The deference I would like is the board looks at the contract, and that contract includes both what's written down there and arbitral decisions interpreting the contract and says that's lawful or not lawful. And the distinction that the board tries to draw in this case between the process of rendering the award and the contract as interpreted is a dangerous one. It's dangerous to the process of collective bargaining. It's dangerous to the arbitral process for exactly the reasons that came up in this case. The party, this was a very clear provision, no picketing. Clearly, I'm mistaken, a waiver of picketing. And what was left was the question of, well, does picketing cover this kind of curious, strange, particular set of events? Clearly picket signs, clearly set up to present the message, but no one's walking around with signs. Obviously, that was not clearly and unmistakably waived literally in the contract, because who would ever think to negotiate a provision about putting picket signs on a truck? The question that was left was, when the party said picketing, was that language appropriate to cover this activity? Clearly an unmistakable waiver makes no sense in that context. The question is, what do the parties mean by the word picketing when they wrote down picketing in this contract? And they probably had no intention whatsoever as related to signs and trucks. The question really is, in all the circumstances, should picketing be read broadly enough to cover that? And the person that the parties agreed to have decide that question was the arbitrator. And he did. Thank you. Thank you. The case is submitted.
judges: Henderson, Kavanaugh, Srinivasan